IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CHARLETTA IKUEGBUWA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. |
| ) | |
| KRUCIAL STAFFING, LLC ) | |
| Serve: KKM Registered Agent, LLC ) | |
| 9800 Metcalf Ave., 5th Floor ) | |
| Overland Park, Kansas, 66212 ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff Charletta Ikuegbuwa, for her Complaint against Krucial Staffing, LLC ("Krucial," or "Defendant") states as follows:

### PARTIES, JURISDICTION, AND VENUE

1.  Plaintiff is an individual residing in Kansas.

2.  Defendant is a limited liability company organized and existing under the laws of the State of Kansas. Defendant can be served through its registered agent, KKM Registered Agent, LLC, 9800 Metcalf Ave., 5th Floor, Overland Park, Kansas 66212.

3.  This Court has jurisdiction over this action, which includes claims arising under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*., pursuant to 28 U.S.C. § 1331

4.  Venue in this Court is proper under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to Plaintiff's claims—namely, her employment with and termination by Defendant—took place within this District.

1

**FACTUAL BACKGROUND**

5. Plaintiff is an African American woman.

6. In April 2020, Plaintiff applied for a Human Resources ("HR") Director position at Krucial.

7. Plaintiff was qualified for the HR Director position based on her years of experience in HR management.

8. Despite her qualifications, Plaintiff was not offered the HR Director position.

9. Krucial offered Plaintiff a temporary HR position instead, which she accepted.

10. Within weeks of her start date, the new HR Director who had been hired for the position over Plaintiff resigned.

11. Plaintiff once again expressed interest in the open HR Director position.

12. Once again, Plaintiff was passed over for the open position.

13. Instead of Plaintiff, Krucial promoted a white woman, Ann-Nicole Bachhuber, as HR Director.

14. Bachhuber, unlike Plaintiff, had no experience working in HR before assuming the Director role.

15. Bachhuber frequently asked Plaintiff for guidance on how to do the job of HR Director.

16. On information and belief, Krucial promoted Bachhuber to the HR Director position over Plaintiff because of Plaintiff's race.

17. In or around September 2020, Plaintiff again applied for a full-time, permanent position with Krucial.

18. Following her interview, Plaintiff was told that Krucial was not hiring temporary employees to become full-time employees.

19. Krucial has hired several white temporary employees to be permanent full-time employees.

20. On information and belief, Krucial gave Plaintiff false information regarding its practice of hiring temporary employees to permanent positions, and once again refused to hire Plaintiff for a permanent role, because of Plaintiff's race and/or skin color.

21. In October 2020, Plaintiff raised concerns with Bachhuber that Bachhuber was treating her worse than a white coworker.

22. Specifically, Plaintiff expressed her frustration that a white coworker, Carla Ruttan, was permitted to take time off work when needed without making up any hours missed. Plaintiff, in contrast, was always expected to make up any time missed so that she worked 40 hours per week.

23. Following Plaintiff's complaint, Bachhuber did not deny any disparate treatment.

24. After receiving Plaintiff's complaint, Bachhuber began requiring all employees to work 40 hours per week and make up any hours that they missed or requested off. This had been Bachhuber's requirement for Plaintiff, one of her only African American employees, all along.

25. In January 2021, Plaintiff attended a meeting with approximately 30 other Krucial employees.

26. At the meeting, Krucial's CEO asked the employees to raise their hands if they were not part of "the Krew."

27. "The Krew" is a colloquial name for Krucial's permanent, full-time employees.

28. Plaintiff, along with two other African American women, were the only employees to raise their hands.

29. The three who raised their hands were the only three African American employees in the room.

30. Plaintiff felt surprised and embarrassed at being singled out at the meeting, and at the stark reminder that Krucial's hiring and promotion practices so closely tracked racial lines.

31. In February or March 2021, Bachhuber questioned Plaintiff for leaving her shift four minutes early.

32. As Bachhuber was aware, Plaintiff frequently worked from home in order to complete tasks and make up hours.

33. Bachhuber was aware that other employees frequently left work early or arrived late for shifts.

34. On information and belief, those employees, who were white, were not questioned about their attendance.

35. Over time, Plaintiff became increasingly frustrated with the racial disparities at Krucial and Bachhuber's disparate treatment of Plaintiff in comparison to her white coworkers.

36. In March 2021, Plaintiff raised her concerns with another Krucial manager, Leah Dozier.

37. Dozier, who is white, was hired as a temporary employee around the same time as Plaintiff, and had since been hired full-time and promoted to a management role.

38. Plaintiff asked Dozier to speak with Bachhuber about Plaintiff's concerns.

39. Dozier later informed Plaintiff that she had relayed Plaintiff's concerns to Bachhuber.

40. In March 2021, shortly after her conversation with Dozier, Plaintiff began to notice Bachhuber going out of her way to avoid interacting with Plaintiff.

41. On March 31, 2021, Bachhuber called Plaintiff into a disciplinary meeting involving Plaintiff, Bachhuber, and an HR manager, to go over a list of "issues" Bachhuber had with Plaintiff's performance.

42. Prior to the March 31 meeting, Plaintiff had never been advised of any issues with her performance.

43. The following day, April 1, 2021, Plaintiff emailed Bachhuber, Jennifer Edgell, and HR Manager Brett Carmical to report her concerns with Bachhuber's actions.

44. In her email, Plaintiff noted that she had discussed her concerns with Bachhuber in the past but that nothing had changed, and that following the March 31 meeting, Plaintiff felt the need to elevate her concerns.

45. In her April 1 email, Plaintiff noted several of the specific issues addressed above, including Bachhuber's insistence that Plaintiff alone make up time when she took vacation days and her questioning of Plaintiff's decision to leave four minutes early one day even though other employees frequently left early and arrived late without consequence.

46. In her email, Plaintiff indicated that she had "felt harassed and singled out for quite some time by [Bachhuber]."

47. Five days later, on April 6, 2021, Plaintiff was called into a meeting with Bachhuber, Carmical, and Carmical's boss, where she was summarily terminated.

48. Carmical informed Plaintiff that "after speaking with [Edgell], we have decided it is best to part ways at this time."

49. No reason was given for Krucial's decision to terminate Plaintiff's employment. The termination meeting lasted approximately 2-3 minutes.

50. On or about May 14, 2021, Plaintiff filed a Charge of Discrimination with the Equal Opportunity Employment Commission and the Kansas Human Rights Commission.

51. On October 27, 2021, the Equal Opportunity Employment Commission issued Plaintiff a Notice of Right to Sue.

## COUNT I: RACE/SKIN COLOR DISCRIMINATION
## FAILURE TO PROMOTE (TITLE VII)

52. Plaintiff incorporates herein the allegations set forth above.

53. Plaintiff, who is an African American woman, is a member of a protected class.

54. Plaintiff was well qualified for the position of HR Director at Krucial in Spring 2020, when she applied and was twice passed over for the job.

55. The second time she expressed interest for the role, Plaintiff was passed over in favor of a less qualified white applicant.

56. In September 2020, Plaintiff again applied for a permanent position with Defendant, and was told that Krucial did not hire temporary employees to permanent roles.

57. Krucial has hired multiple white temporary employees to fill permanent positions.

58. Defendant's failure to promote Plaintiff, first as HR Director and then to another permanent role, occurred under circumstances giving rise to an inference of discrimination based on Plaintiff's race or skin color.

59. Defendant's conduct has damaged Plaintiff's career, finances, and personal wellbeing in several ways compensable under Title VII.

WHEREFORE, Plaintiff Charletta Ikuegbuwa respectfully requests that the Court enter judgment in her favor and against Defendant Krucial Staffing, LLC for damages to be proven at trial, and for such other relief as the Court deems just and proper under the circumstances.

### COUNT II: RACE/SKIN COLOR DISCRIMINATION
### WRONGFUL TERMINATION (TITLE VII)

60. Plaintiff incorporates herein the allegations set forth above

61. Plaintiff is an African American Black woman, a member of a protected class.

62. Plaintiff was separated from her team, singled out in a meeting, and ultimately terminated.

63. Similarly situated white employees suffered no such adverse action.

64. The circumstances of Defendant's termination of Plaintiff's employment give rise to an inference that she was unlawfully terminated as a result of her race and/or skin color.

65. Defendant's discriminatory conduct has damaged Plaintiff in a number of ways compensable by Title VII.

WHEREFORE Plaintiff Charletta Ikuegbuwa respectfully requests that the Court enter judgment in her favor and against Defendant Krucial Staffing, LLC for damages to be proven at trial, and for such other relief as the Court deems just and proper under the circumstances.

### COUNT III: RETALIATION (TITLE VII)

66. Plaintiff incorporates herein the allegations set forth above.

67. Plaintiff's complaints to Bachhuber in October 2020 concerning Bachhuber's disparate treatment of Plaintiff relative to a white coworker constitutes protected activity under Title VII.

68. Plaintiff's discussion with Dozier in March 2021 in which Plaintiff complained about racial disparities among Krucial's workforce constitutes protected activity under Title VII.

69. Plaintiff's emails to Edgell, Carmical and Bachhuber on April 1, 2021, in which she raised her concern that Bachhuber was singling her out for poor treatment relative to her white coworkers, was a report of discrimination and constituted protected activity under Title VII.

70. Days later, Defendant terminated Plaintiff's employment without cause.

71. The timing and circumstances of Defendant's termination of Plaintiff's employment give rise to an inference that she was unlawfully terminated in retaliation for reporting race and/or skin color discrimination on the part of her direct supervisor.

72. Defendant's retaliatory conduct has damaged Plaintiff in a number of ways compensable by Title VII.

WHEREFORE Plaintiff Charletta Ikuegbuwa respectfully requests that the Court enter judgment in her favor and against Defendant Krucial Staffing, LLC for damages to be proven at trial, and for such other relief as the Court deems just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury for the foregoing causes of action.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff hereby requests the trial be held in Kansas City, Kansas.

**HKM EMPLOYMENT ATTORNEYS, LLP**

/s/ Brad Thoenen
Brad Thoenen         KS Bar No. 24479
bthoenen@hkm.com
John Ziegelmeyer     KS Bar No. 23003
jziegelmeyer@hkm.com
Kevin Todd           KS Bar No. 78998
ktodd@hkm.com
1501 Westport Road
Kansas City, MO 64111
Phone and Fax: (816) 875-9339